IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARIBEL VAZQUEZ-ROBLES,

**Plaintiff,**

**v.**                                    **Civil No.** 12-1600 (FAB)

COMMOLOCO, INC.,

**Defendant.**

## OPINION AND ORDER

BESOSA, District Judge.

Maribel Vazquez-Robles ("Vazquez") brought suit against her former employer, CommoLoCo, Inc. ("CommoLoCo"), alleging that CommoLoCo discriminated against her on the basis of her disability, in violation of the Americans with Disabilities Act ("ADA") and Puerto Rico Law 44; retaliated against her in violation of the ADA, Title VII of the Civil Rights Act of 1964 ("Title VII"), and Puerto Rico Law 115; and dismissed her without just cause in violation of Puerto Rico Law 80.[1]  (Docket No. 1.)

Before the Court is CommoLoCo's motion for summary judgment. (Docket No. 184.)  Vazquez opposed the motion, (Docket No. 202), and CommoLoCo replied, (Docket No. 212).  For the reasons that follow, CommoLoCo's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART.**

---

[1] Plaintiff Vazquez also brought a claim pursuant to Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit 31, § 5141, which is Puerto Rico's general tort statute.  (Docket No. 1.)  Vazquez voluntarily dismissed this claim.  See Docket Nos. 28-29.

## I.  SUMMARY JUDGMENT STANDARD

A court will grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Dunn v. Trs. of Boston Univ., 761 F.3d 63, 68 (1st Cir. 2014) (quoting Patco Const. Co. v. People's United Bank, 684 F.3d 197, 206 (1st Cir. 2012)).

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Tobin v. Fed. Exp. Corp., 775 F.3d 448, 450 (1st Cir. 2014) (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)). "When the nonmovant bears the burden of proof on a particular issue, she can thwart summary judgment only by identifying competent evidence in the record sufficient to create a jury question." Id. at 450-51. The Court draws all reasonable inferences from the record in the light most favorable to the nonmovant, but it disregards unsupported and conclusory allegations. McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014).

## II.  FACTUAL BACKGROUND

### A.  Hired and Rehired

Vazquez worked for CommoLoCo during two periods.  First, she worked for about seven years and five months, from July 2, 1990, until she resigned on November 26, 1997.  (Docket No. 185-6 at pp. 2-3.)[2]  CommoLoCo rehired Vazquez on July 1, 2002, as branch manager of the Morovis branch.  (Docket No. 185-2 at p. 7.)  In July 2009, CommoLoCo assigned Vazquez as branch manager of the Carolina II branch.  Id. at p. 11.

### B.  Injury, First Leave of Absence, and Return to Work

On December 24, 2009, Vazquez suffered a work-related injury to her back.  (Docket No. 208-1 at pp. 3, 6-7.)  She reported the injury to the Puerto Rico State Insurance Fund Corporation ("SIFC") on December 28, 2009.  Id. at pp. 6-9.  The SIFC placed Vazquez on rest for about a month and a half, and she returned to work on February 11, 2010.  (Docket No. 185-3 at p. 4.)  After returning to work, Vazquez continued to receive medical and therapy treatment for her injury, and she was able to attend those appointments while working as branch manager.  Id. at pp. 16, 22, 24.

Vazquez had a cervical sprain, a lumbar sacral sprain, and a herniated disc in the lumbar sacral area.  (Docket No. 101 at pp.

---

[2] When citing to deposition transcripts, the Court uses the page numbers generated by the electronic case filing system on the docket, not the original page numbers of the transcripts.

105-106.)  As a result, she was unable to sit or stand for long periods of time and needed a cane to walk.  Id. at p. 108.

## C.  Request for a Demotion

On March 22, 2010, Vazquez requested a temporary demotion to assistant manager because performing her branch manager duties while attending medical and therapy appointments was causing her a lot of stress.  (Docket Nos. 185-8 at p. 2; 185-3 at p. 40.)

On April 7, 2010, CommoLoCo's human resources manager, Yarisis Vega ("Vega"), sent Vazquez forms for Vazquez and her physician to complete.  (Docket Nos. 185-9 at p. 2; 185-10 at pp. 8-14.)  Vega advised Vazquez that she had to return the forms by April 28, 2010, to enable CommoLoCo to evaluate her request for a demotion. (Docket No. 185-10 at p. 8.)

Each time Vazquez went to a therapy session, which was three times a week, Vega would ask Vazquez about the forms and remind her to submit them by the due date.  (Docket No. 185-4 at pp. 30, 32.)

On May 28, 2010, Vega sent Vazquez a letter explaining that because Vazquez had not submitted the forms, Vazquez's request for an accommodation was considered closed.  (Docket No. 185-11 at p. 2.)  Vazquez responded by email on June 8, 2010, asking CommoLoCo to keep her request open because she was still waiting for the SIFC physician to complete the form.  (Docket No. 185-12 at p. 2.)  On that same day, Vega replied and indicated that CommoLoCo would

proceed with her request for a reasonable accommodation as soon as it received the completed forms.  (Docket No. 185-13 at p. 2.)

On July 21, 2010, the SIFC sent a letter to Vega recommending that CommoLoCo not assign Vazquez tasks that entail great responsibilities and high levels of stress because the stress would worsen her medical condition.  (Docket No. 185-14 at p. 2.) Vazquez also completed and submitted to CommoLoCo a two-page form titled "Form to Request Reasonable Accommodation (ADA)."  (Docket No. 185-16 at pp. 3-4.)  On the form, Vazquez explained that as branch manager, it worried her to have to leave her personnel alone when she went to medical and therapy appointments.  Id. at p. 3. She requested to be assigned to an assistant manager position, which she thought would be better for her because she would not have to be in the office at all times.  Id. at p. 4.

On August 24, 2010, Vega informed Vazquez that based on the information provided by the SIFC and Vazquez concerning her request for a demotion, as well as CommoLoCo's business needs, CommoLoCo had decided to consider Vazquez for a customer account specialist ("CAS") position.  (Docket No. 185-17 at p. 2.)  Vazquez rejected the CAS position and asked to be reconsidered for an assistant manager position.  See Docket Nos. 185-5 at p. 24; 185-22 at p. 2.

**D.   First Administrative Charge and Second Leave of Absence**

On September 1, 2010, Vazquez filed a charge against CommoLoCo with the Puerto Rico Anti-Discrimination Unit ("ADU"), alleging

that CommoLoCo discriminated against Vazquez because of her disability by denying her request to be demoted to an assistant manager position.  (Docket No. 185-23.)

On September 21, 2010, the SIFC placed Vazquez on rest for one year due to her emotional condition.  (Docket No. 185-5 at pp. 36, 38.)  During that year, Vazquez was mentally impaired to the extent that friends and relatives had to bathe her, drive her places, and sometimes feed her.  (Docket No. 202-2 at p. 8.)

On August 25, 2011, while still on her one-year leave of absence, Vazquez withdrew her administrative charge.  (Docket Nos. 202-2 at p. 11; 214-7 at p. 2; 214-8 at p. 2.)

**E.   Return to Work and Performance Evaluation**

On September 21, 2011, after her one-year leave of absence, Vazquez returned to work.  (Docket No. 185-5 at p. 38.)  She was reinstated to her branch manager position and received the same pay and benefits that she had received before her leave of absence. Id. at pp. 46, 48.

On September 30, 2011, nine days after returning to work, Vazquez received an evaluation for the work that she had performed from January through July of 2010.  (Docket No. 208-2 at p. 11.) The evaluation rated Vazquez's performance as "unsatisfactory" for twelve out of fourteen managerial performance factors.  (Docket No. 202-17 at pp. 7, 9, 11.)

**F.   Branch Closings and Termination**

On October 3, 2011, CommoLoCo closed four branches, including the Carolina II branch where Vazquez worked, due to the lack of sufficient growth in Puerto Rico's economy.  See Docket Nos. 185-1 at p. 2; 185-7 at p. 1; 202-8 at p. 2.   Before closing these branches, CommoLoCo had closed other branches in Puerto Rico as part of a reduction in force.  See Docket Nos. 185-1 at p. 2; 185-5 at p. 40.

Four branch manager positions were eliminated when CommoLoCo closed four branches in October 2011.  (Docket No. 202-18 at p. 10.)   At the time, there were two other branches in Puerto Rico that had open branch manager positions.  Id.  CommoLoCo offered two of the four branch managers whose positions were eliminated the opportunity to transfer to these two open positions.  (Docket No. 202-8 at p. 2.)  CommoLoCo decided which employees would be offered transfers based on the length of time the employees had worked at CommoLoCo.  Id. at p. 3.   Accordingly, branch managers Marivel Lorenzo (who was hired on November 18, 1985) and Maribel Rivera Rosario (who was hired on January 27, 1995) were transferred to the open positions.  (Docket No. 202-18 at p. 10.)  Vazquez and the fourth branch manager (who was hired on July 18, 1995) were terminated.  Id.

Because Vazquez did not report to work on October 3, she was notified of the branch closing and of her termination on October 4,

2011.  (Docket No. 185-1 at p. 2.)  All Carolina II branch
employees were laid off when the branch closed.  (Docket No. 185-5
at p. 44.)

**G.   Second Administrative Charge and This Lawsuit**

On October 25, 2011, Vazquez filed a charge with the Equal
Employment Opportunity Commission ("EEOC") alleging that CommoLoCo
discriminated against her because of her disability and retaliated
against her by giving her a negative evaluation and terminating
her.  (Docket No. 185-24.)  On June 1, 2012, the EEOC issued
Vazquez a right-to-sue letter.  (Docket No. 212-2.)  Vazquez
brought this suit on July 26, 2012.  (Docket No. 1.)

### III.   DISABILITY DISCRIMINATION CLAIMS

The ADA makes it unlawful to "discriminate against a qualified
individual on the basis of disability in regard to job application
procedures, the hiring, advancement, or discharge of employees,
employee compensation, job training, and other terms, conditions,
and privileges of employment."  42 U.S.C. § 12112(a).  Puerto Rico
Law 44, P.R. Laws Ann. tit 1, §§ 501 *et seq.*, mirrors the ADA, and
on the merits, claims brought pursuant to the two statutes are
coterminous.  See Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76,
87 (1st Cir. 2008) (affirming dismissal of ADA and Law 44 claim and
noting that Law 44 claim required no separate summary judgment
analysis).

Plaintiff Vazquez brings three disability discrimination claims pursuant to the ADA and Law 44:  (1) that CommmoLoCo failed to provide her with a reasonable accommodation when it denied her request for a temporary demotion; (2) that CommoLoCo subjected her to a hostile work environment; and (3) that CommoLoCo terminated her because of her disability.  CommoLoCo moves for summary judgment on each claim.

## A.    Failure to Accommodate Claim

CommoLoCo argues that it is entitled to summary judgment on Vazquez's failure to accommodate claim on the merits and because the claim is time-barred.  The Court addresses the merits argument first.

### 1.    Merits

The ADA requires employers to offer "reasonable accommodations" to disabled employees, unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business."  42 U.S.C. § 12112(b)(5)(A).  A plaintiff asserting a failure to accommodate claim must establish the following three elements:  (1) that she had a disability as defined by the ADA; (2) that she was able to perform the essential functions of her job with or without a reasonable accommodation; (3) that the employer, despite knowing of

her disability, did not offer a reasonable accommodation.[3]  Lang v.
Wal-Mart Stores E., L.P., 813 F.3d 447, 454 (1st Cir. 2016).
CommoLoCo moves for summary judgment on only the first and third
elements, arguing that Vazquez did not suffer from a disability and
that CommoLoCo did offer Vazquez a reasonable accommodation.
(Docket No. 184 at pp. 8-9, 11-14.)

   *a.  Disability*

        A person is disabled within the meaning of the ADA
if she has "a physical or mental impairment that substantially
limits one or more major life activities."   42 U.S.C. §
12102(1)(A).  "[M]ajor life activities include, but are not limited
to, caring for oneself, performing manual tasks, . . . walking,
standing, lifting, bending, . . . and working."  Id. § 12102(2)(A).
Congress has instructed that the definition of disability in the
ADA "shall be construed in favor of broad coverage of individuals
under [the ADA], to the maximum extent permitted by the terms of
[the ADA]."  Id. § 12102(4)(A).

        Here, defendant CommoLoCo argues tersely that
Vazquez did not have a disability because she admitted that she
could still perform the duties of her position.  (Docket No. 184 at
p. 8.)  This admission is immaterial.  In fact, a plaintiff must be

---

[3] The McDonnell Douglas burden-shifting framework, which the Court
will use to evaluate Vazquez's discriminatory termination claim,
does not apply to failure to accommodate claims.  See Higgins v.
New Balance Athletic Shoe, Inc., 194 F.3d 252, 263-64 (1st Cir.
1999).

able to perform the functions of her job, with or without reasonable accommodations, to assert a failure to accommodate claim. See Lang, 813 F.3d at 454. Vazquez put forth sufficient evidence to show that her back injury limited her ability to stand and walk, see Docket No. 101 at pp. 108, 111, which are "major life activities" pursuant to the ADA, 42 U.S.C. § 12102(2)(A). The Court therefore rejects CommoLoCo's argument that Vazquez cannot establish that she was disabled.

### b. *Reasonable Accommodation*

A "reasonable accommodation" includes "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). "To show that a proposed accommodation was reasonable, a plaintiff must prove 'not only that the proposed accommodation would enable her to perform the essential functions of her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances.'" Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 23 (1st Cir. 2004) (quoting Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001)). A plaintiff who requests reassignment to a different position as a reasonable accommodation bears the burden of showing that there was a vacancy for that position at the time of her request. Lang, 813 F.3d at 456.

Here, as a reasonable accommodation, Vazquez requested to be reassigned from her branch manager position to an assistant manager position because the SIFC recommended that she

engage in less stressful tasks.  Defendant CommoLoCo argues first
that it provided Vazquez a reasonable accommodation by offering her
a CAS position.  (Docket No. 184 at pp. 12-14.)  CommoLoCo seems to
imply that because the CAS position was a low-level position, it
necessarily entailed a low level of stress.  Vazquez asserts in her
deposition, however, that the CAS position was either equally as
stressful or more stressful than the branch manager position.
(Docket No. 185-5 at pp. 14, 16, 18.)  She explains that even
though it was a low-level position, it involved a lot of stress
because the CAS had to work in the front office welcoming and
assisting customers who come in to talk, fight, argue, and insult,
and because the CAS had to generate loans to meet established
goals.  Id.  Based on this testimony, a reasonable jury could
conclude that offering the CAS position was not a reasonable
accommodation for Vazquez's disability.

        CommoLoCo next argues that Vazquez's proposed
accommodation - reassignment from branch manager to assistant
manager - was not reasonable.  (Docket No. 184 at pp. 12-14.)  Vega
states in an affidavit that both the branch manager and assistant
manager positions entailed the same functions, the same degree of
responsibility, and the same level of stress.  (Docket No. 185-1 at
p. 4.)  CommoLoCo's official job descriptions of the two positions,
however, depict different job functions and different percentages
of time spent on each function.  Compare Docket No. 185-20 at p. 4,

with Docket No. 185-21 at p. 3.    Vazquez testified in her deposition that the assistant manager position was less stressful than the branch manager position.  (Docket No. 185-3 at p. 40.) Based on this evidence, a reasonable jury could conclude that reassignment to an assistant manager position would have been a reasonable accommodation.

CommoLoCo's final argument is that there was no vacant assistant manager position to offer Vazquez.  On August 24, 2010, Vega explained to Vazquez that there were no assistant manager positions available and that the Carolina II branch did not have an assistant manager because Ramon Bermudez, who held the position of finance representative, was assigned duties to support the administration of the branch to prepare him for a branch manager position.  (Docket No. 185-1 at p. 4.)  Vazquez stated in her deposition, however, that there was a vacant assistant manager position at the Carolina II branch because an employee named Raul retired from that position in 2009.  (Docket No. 185-2 at p. 21, 23, 25.)  Vazquez explained that although Ramon Bermudez was supposed to fill the position, he never did, and the position remained open.  Id.  Based on this testimony, a reasonable jury could conclude that there was a vacant assistant manager position.

Accordingly, the Court **DENIES** CommoLoCo's motion for summary judgment on the merits of Vazquez's failure to accommodate

claim brought pursuant to the ADA and Law 44 and will now discuss whether the claim is time-barred.

**2.   Timeliness**

  **a.   *ADA Claim***

          ADA employment discrimination claims are subject to Title VII's procedural requirements.   42 U.S.C. § 12117(a); Rivera-Diaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 389 (1st Cir. 2014).  Accordingly, before bringing suit in federal court, an ADA plaintiff must satisfy two administrative exhaustion requirements:  timely file a charge with the EEOC and receive a right-to-sue letter from the agency.  Rivera-Diaz, 748 F.3d at 389-90.  In Puerto Rico, the EEOC charge must be filed within 300 days of the alleged unlawful conduct.   Id.   "Each discrete discriminatory act starts a new clock for filing charges alleging that act," and time-barred acts are not actionable, "even when they are related to acts alleged in timely filed charges."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  When a plaintiff alleges that her request for a reasonable accommodation pursuant to the ADA was refused, "the refusal is a discrete discriminatory act triggering the statutory limitations period."  Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 129 (1st Cir. 2009) (quoting Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination, 808 N.E.2d 257, 268 (2004)).

Here, plaintiff Vazquez requested a temporary
demotion to an assistant manager position on March 22, 2010.
CommoLoCo denied that request on August 24, 2010.  Because denial
of a request for a reasonable accommodation is a discrete act, id.,
Vazquez had to file a charge with the EEOC within 300 days of
CommoLoCo's denial on August 24, 2010, see Rivera-Diaz, 748 F.3d at
389-90; Morgan, 536 U.S. at 113.  Vazquez initially filed a timely
charge on September 1, 2010, but she withdrew that charge and never
received a right-to-sue letter.  She then filed a second charge,
for which she received a right-to-sue letter, but that charge was
filed on October 25, 2011, more than 300 days after CommoLoCo's
denial of Vazquez's request for a reasonable accommodation.  Her
failure to accommodate claim would generally be time-barred.  See
Peralta v. Rockefeller Univ., 328 F. App'x 717, 718 (2d Cir. 2009)
(citing McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 214 (2d
Cir. 2006)) (holding that claims are "time-barred where an employee
withdrew a timely-filed charge with the EEOC and then filed a
second, untimely charge, in connection with which a right-to-sue
letter was issued").

Vazquez advances five arguments, however, as to why
her claim is not time-barred.  (Docket No. 202 at pp. 5-18.)
First, Vazquez urges the Court to apply the continuing violation
doctrine, which allows a plaintiff to recover "for discriminatory
acts that otherwise would be time-barred so long as a related act

fell within the limitations period," <u>Tobin</u>, 553 F.3d at 130.  <u>See</u>
Docket No. 202 at pp. 5-10.  It is well-settled, however, that the
continuing violation doctrine does not apply to discrete acts of
alleged discrimination.  <u>Ayala v. Shinseki</u>, 780 F.3d 52, 57 (1st
Cir. 2015); <u>Tobin</u>, 553 F.3d at 130.  "Instead, [the doctrine]
applies only to claims that cannot be said to occur on a particular
day and that by their very nature require repeated conduct to
establish an actionable claim, such as hostile work environment
claims."  <u>Ayala</u>, 780 F.3d at 57.  As already discussed, denial of
a request for a reasonable accommodation is a discrete act.  <u>Tobin</u>,
553 F.3d at 129.  Accordingly, the continuing violation doctrine
does not apply to this claim.

        Second, Vazquez argues that CommoLoCo waived the
timeliness defense by not raising it before the EEOC.  (Docket No.
202 at pp. 10-11.)  In <u>Mercado v. Ritz-Carlton San Juan Hotel, Spa
& Casino</u>, 410 F.3d 41, 45 (1st Cir. 2005), however, the First
Circuit Court of Appeals held that a defendant does not waive a
timeliness defense by not raising it before the EEOC where, like
here, the EEOC issues a right-to-sue letter without reaching the
merits of the plaintiff's claim, <u>see</u> Docket No. 212-2.  Vazquez's
argument therefore holds no water.

        Third, Vazquez argues that CommoLoCo waived its
right to raise the statute of limitations defense by asserting it
only generically in its answer to Vazquez's complaint.  (Docket

No. 202 at pp. 11-14.)   Among several affirmative defenses,
CommoLoCo stated in its answer that Vazquez's "claims are in whole
or in part barred by the applicable statute of limitations."
(Docket No. 144 at p. 16.)   In 2005, the First Circuit Court of
Appeals described a similarly worded affirmative defense as
conclusory but sufficient because it "adequately identified the
issue."   Mercado 410 F.3d at 45.   Vazquez argues that the higher
plausibility standard established by the Supreme Court in Bell
Atlantic Corp. v. Twombly in 2007 and Ashcroft v. Iqbal in 2009 now
should apply to affirmative defenses.

        The Court is unaware of any circuit court of appeals
that has decided the issue of whether the pleading standards of
Twombly and Iqbal apply to affirmative defenses, and the district
courts are split.[4]  Having reviewed the conflicting district court
decisions, the Court is persuaded by the reasons offered by the
courts that have declined to apply the plausibility standard to
affirmative defenses.   The Court finds particularly persuasive the

---

[4] Some district courts have held that the pleading standards of
Twombly and Iqbal apply to affirmative defenses. See, e.g., Barnes
v. AT & T Pension Ben. Plan-Nonbargained Program, 718 F. Supp. 2d
1167, 1172-73 (N.D. Cal. 2010); Nixson v. The Health All., No.
1:10-CV-00338, 2010 WL 5230867, at *2 (S.D. Ohio Dec. 16, 2010).
Other district courts have declined to extend the plausibility
standard to affirmative defenses. See, e.g., Paleteria La
Michoacana v. Productos Lacteos, 905 F. Supp. 2d 189, 193 (D.D.C.
2012); Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza,
Inc., 287 F.R.D. 119, 123 (D. Mass. 2012); Tyco Fire Products LP v.
Victaulic Co., 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011); Falley v.
Friends Univ., 787 F. Supp. 2d 1255, 1259 (D. Kan. 2011); Lane v.
Page, 272 F.R.D. 581, 591 (D.N.M. 2011).

five reasons given in Paleteria La Michoacana v. Productos Lacteos, 905 F. Supp. 2d 189 (D.D.C. 2012).   The court in that case explained that in Twombly and Iqbal, the Supreme Court interpreted Federal Rule of Civil Procedure 8(a)(2), which sets forth the pleading requirements for a complaint and "employs different language, governs a different pleading, and affects a different stage of the litigation" than Federal Rule of Civil Procedure 8(c), which governs affirmative defenses.   Paleteria, 905 F. Supp. 2d at 190, 193.   The court also explained that "plaintiffs and defendants do not share an equal footing when it comes to the speed with which they must craft their pleadings"; while a plaintiff chooses when to file a complaint, a defendant must typically submit an answer within twenty-one days of being served.   Id. at 191.   For these and the other reasons set forth in Paleteria, the Court concludes that Twombly and Iqbal do not apply to affirmative defenses.   An affirmative defense asserted in an answer need not be plausible to be preserved, it must merely identify the issue adequately.   See Mercado, 410 F.3d at 45.   CommoLoCo preserved its statute of limitations defense by adequately identifying it in its answer. The Court therefore rejects Vazquez's waiver argument.

        Fourth, Vazquez argues that her untimeliness should be forgiven pursuant to the doctrine of equitable tolling because CommoLoCo never posted an EEOC notice in the workplace. (Docket No. 202 at pp. 14-17.)   "[A]n employer's violation of the EEOC

posting requirement may provide a . . . basis for an extended filing period where the employee had no other actual or constructive knowledge of [the] complaint procedures." Mercado, 410 F.3d at 46 (internal quotation marks and citation omitted). "[A]ctual knowledge occurs when an employee becomes generally aware that [s]he possesses a legal right to be free from the type of discrimination [s]he has alleged," and does not require "specific awareness of the 300-day statutory filing period." Id. at 48. Regardless of whether CommoLoCo complied with the EEOC posting requirement, plaintiff Vazquez demonstrated that she had actual knowledge of the administrative complaint procedures when she filed her first complaint on September 1, 2010.  Because she had actual knowledge of the complaint procedures eight days after the discrete act of discrimination occurred, her equitable tolling argument based on EEOC posting requirements fails.

        Fifth, Vazquez argues that the statutory period should be tolled because she was suffering from mental illness while on a year-long leave of absence from September 2010 through September 2011.  (Docket No. 202 at pp. 17-18.)  Equitable tolling based on mental illness is available "only if the plaintiff show[s] that the mental disability was so severe that the plaintiff was unable to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel." Vazquez-Rivera v. Figueroa, 759 F.3d 44, 50 (1st Cir. 2014) (first

alteration in original) (quoting Melendez-Arroyo v. Cutler-Hammer de P.R. Co., 273 F.3d 30, 37 (1st Cir. 2001)).  This is a high bar, and "merely . . . establish[ing] a diagnosis such as severe depression is not enough."  Melendez-Arroyo, 273 F.3d at 38.

          In Melendez-Arroyo, the plaintiff offered expert diagnoses and "affidavit or deposition evidence from herself and her sister" that "her state was so impaired that she had to live with her sister and that for some of the time she was unable to manage even such basic functions as getting dressed and brushing her teeth."  Id.  Even though the employer refuted this by pointing to notes from a state insurance fund interview with the employee describing her behavior as logical and coherent, the First Circuit Court of Appeals concluded that the plaintiff "raised a factual dispute about her capacity that could not be resolved solely on the papers."  Id.  The court remanded to the district court to hold an evidentiary hearing to determine whether equitable tolling based on the plaintiff's mental disability was warranted.  Id. at 39 (holding that although it concerns a factual dispute, the question of whether equitable tolling should apply is for the judge, not the jury); see also Nunnally v. MacCausland, 996 F.2d 1, 7 (1st Cir. 1993) (remanding to district court to hold evidentiary hearing on equitable tolling based on mental disability where plaintiff showed a probable diagnosis of paranoid schizophrenia).

Here, the SIFC placed Vazquez on rest for one year due to an unspecified emotional condition. (Docket No. 185-5 at pp. 36, 38.) Vazquez states in an affidavit signed under penalty of perjury that during "almost a year," she was "mentally impaired to the extent that her son, sisters and friends had to clean her, bath[e] her, drive[] her and sometimes feed her." (Docket No. 202-2 at p. 8.) Defendant CommoLoCo disputes this fact by arguing that it is based on Vazquez's "speculation or conjecture" and that it is "conclusory and completely unsupported by adequate record evidence beyond Vazquez'[s] self-serving statement." (Docket No. 214 at p. 17.) Vazquez's statement as to her mental condition is not speculative because it is based on her personal experience. Furthermore, a plaintiff may submit an affidavit to defend against summary judgment as long as the statements in the affidavit do not contradict her prior testimony. Cf. Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000). CommoLoCo has not identified testimony in Vazquez's deposition that contradicts that statement in her affidavit, and the Court has found no inconsistency in the record.

CommoLoCo also points to Vazquez's prior testimony to show that she attended three hearings before the ADU between September 1, 2010, and August 25, 2011, presumably to imply that her attendance means she was able to engage in rational decision-making during that period. (Docket No. 212 at p. 9.) Vazquez's

Civil No. 12-1600 (FAB)                                          22

testimony, however, was that three hearings were held during that
period.  (Docket No. 101 at p. 97.)  She did not testify that she
attended the hearings.  Id.  Furthermore, she testified that no
conclusions were reached as a result of the hearings because she
was "still on rest" and "the attorney said that [she] was not in
any capacity to make any decisions."  Id.  This is consistent with
the statement in her affidavit and further supports her argument
that she suffered from a severe mental disability that rendered her
unable to engage in deliberate decision making.

         The Court finds that Vazquez has raised a factual
dispute as to whether she suffered from a mental disability so
severe that the Court should toll the limitations period.  The
record on this issue, however, is too underdeveloped for the Court
to determine solely on the papers whether equitable tolling is
warranted.  A pre-trial evidentiary hearing is therefore necessary.
See Melendez-Arroyo, 273 F.3d at 38.  During the hearing, plaintiff
will have the burden of proving that her mental disability "was so
severe that [she] was unable to engage in rational thought and
deliberate decision making sufficient to pursue [her] claim alone
or through counsel."  Vazquez-Rivera, 759 F.3d at 50 (quoting
Melendez-Arroyo, 273 F.3d at 37).  Vazquez will also have the

burden of proving that this severe mental disability lasted for at least 127 days between August 24, 2010, and October 25, 2011.[5]

The Court therefore **DENIES** summary judgment as to Vazquez's failure to provide a reasonable accommodation claim brought pursuant to the ADA. The Court will hold a pre-trial evidentiary hearing to determine whether Vazquez suffered from a severe mental disability during a period of at least 127 days between August 24, 2010, and October 25, 2011, such that the Court should equitably toll the 300-day statute of limitations and find Vazquez's ADA failure to accommodate claim timely.

### b.   Law 44 Claim

A one-year statute of limitations applies to Law 44 claims. Toledo-Colon v. Puerto Rico, 812 F. Supp. 2d 110, 119 (D.P.R. 2011) (Gelpi, J.). Defendant CommoLoCo did not move for summary judgment based on this one-year statute of limitations, nor did it argue that Vazquez's Law 44 claim is otherwise time-barred based on an administrative exhaustion requirement. See Docket No. 184 at p. 24 (moving for summary judgment on Vazquez's Law 44 claim only on the merits). Neither party presented arguments or authority as to whether equitable tolling based on mental illness

---

[5] The 300-day clock started on August 24, 2010, the day CommoLoCo denied Vazquez's request for a demotion to assistant manager. Vazquez filed an administrative charge 427 days later, on October 25, 2011. Thus, Vazquez's claim is timely only if the Court tolls the limitation period for at least 127 days.

is recognized for Law 44 claims.  Vazquez's Law 44 failure to accommodate claim therefore survives summary judgment.

**B.    Hostile Work Environment Claim**

To establish a hostile work environment claim, a plaintiff must show, in addition to other elements, "that her workplace was 'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of . . . [her] employment and create an abusive working environment.'" Colon-Fontanez v. Mun. of San Juan, 660 F.3d 17, 43 (1st Cir. 2011) (first alteration in original) (quoting Quiles-Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006)).  To determine whether harassing conduct is sufficiently severe or pervasive, courts consider the totality of the circumstances, including the severity and frequency of the conduct and whether it unreasonably interfered with the plaintiff's work performance.  Id. at 44; see Quiles-Quiles, 439 F.3d at 7 (affirming hostile work environment finding where plaintiff "was subject to daily ridicule about his mental impairment"); Arrieta-Colon v. Wal-Mart P.R., Inc., 434 F.3d 75, 89 (1st Cir. 2006) (same where plaintiff was subject to "constant mockery and harassment . . . by fellow co-workers and supervisors alike due to his condition").  Finally, the conduct complained-of must be "objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the [plaintiff] in fact did perceive to be

so." <u>Noviello v. City of Boston</u>, 398 F.3d 76, 92 (1st Cir. 2005) (quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787 (1998)).

Here, Vazquez maintains that Vega created a hostile work environment by "excessively" reminding her to complete and submit the forms that were necessary for CommoLoCo to evaluate Vazquez's request for a demotion.  (Docket No. 202 at pp. 32-33.)  Vazquez stated in her deposition that each time she went to a therapy session, which was three times a week, Vega would ask Vazquez about the forms and remind her to submit them by the due date.  (Docket No. 185-4 at pp. 30, 32.)  She stated that Vega would call Vazquez and say "Look, Maribel, the documents, are they ready?  The time is approaching."  <u>Id.</u> at p. 32.  Vega's "insistence" put Vazquez "in a state of tension."  <u>Id.</u>

Although Vazquez found Vega's insistence to be offensive, a reasonable person would not find it hostile or abusive.  Vega's reminders were never accompanied by ridicule, insults, or threats.  It is reasonable for a human resources manager to give reminders about approaching administrative due dates.  Perhaps Vega should have decreased the frequency of the reminders after realizing that they were causing Vazquez stress.  Even if this frequency could be described as unprofessional, "a supervisor's unprofessional managerial approach and accompanying efforts to assert her authority are not the focus of the discrimination laws." <u>Colon-Fontanez</u>, 660 F.3d at 44 (quoting <u>Lee-Crespo v.</u>

Schering-Plough Del Caribe Inc., 354 F.3d 34, 46-47 (1st Cir. 2003)).

Vazquez also bases her hostile work environment claim on CommoLoCo's denial of her request to be temporarily demoted to assistant manager. (Docket No. 202 at p. 33.)  The evidence shows, however, that CommoLoCo handled her request in a professional and respectful manner:  Vega spoke with her on the phone and in-person about the request; Vega mailed and emailed Vazquez forms to be completed by her and her physician; even though Vazquez did not submit the forms by the due date, Vega agreed that CommoLoCo would proceed with her request as soon as it received the completed forms; Vega spoke with Vazquez over the phone about CommoLoCo's decision to offer her a CAS position, and followed up by sending a cordial email. (Docket Nos. 185-4 at p. 2; 185-9; 185-10; 185-13; 185-17.)  None of these communications was hostile, abusive, insulting, or harassing.  Absent harassing conduct, CommoLoCo's denial of Vazquez's request for a temporary demotion did not create a hostile work environment.

Finally, Vazquez asserts that CommoLoCo created a hostile work environment by giving her an unsatisfactory performance evaluation on September 30, 2011, nine days after she returned from her year-long leave of absence, for work that she had performed from January through July of 2010. (Docket No. 202 at p. 33.)  Again, Vazquez does not claim that this evaluation was accompanied by any type of

discriminatory ridicule, mockery, or insult.  The evaluation also did not alter the conditions of her employment; there is no evidence that she received a demotion or decrease in salary as a result.  Vazquez was terminated four days later when her branch closed, but there is no evidence that her unsatisfactory evaluation contributed to the decision to terminate her.  See Docket No. 185-7 (explaining that decision of which branch managers to transfer when four branches closed was based on seniority, not performance).

Even considering the evidence in the light most favorable to Vazquez, the Court concludes that no reasonable jury could find that CommoLoCo subjected Vazquez to disability-based harassment that was so severe or pervasive that it altered the conditions of her employment.  The Court therefore **GRANTS** summary judgment in favor of defendant CommoLoCo as to Vazquez's hostile work environment claim brought pursuant to the ADA and Law 44.

## C.   Discriminatory Termination Claim

When a plaintiff relies on only indirect evidence of discrimination to prove her ADA claim, as Vazquez does here, the First Circuit Court of Appeals applies the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 186 (1st Cir. 2011).  Pursuant to this framework, the plaintiff must first make out a *prima facie* disability discrimination claim by establishing (1) that she has a disability within the meaning of

the ADA; (2) that she was qualified to perform her job, with or without reasonable accommodations; (3) that she was subject to an adverse employment action; (4) that she was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (5) that she suffered damages as a result. Id. If the plaintiff establishes a *prima facie* claim, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action." Id. at 186-87. "If the employer offers a non-discriminatory reason, the burden then shifts back to the plaintiff to show that the employer's justification is mere pretext cloaking discriminatory animus." Id. at 187.

Here, defendant CommoLoCo does not challenge plaintiff Vazquez's ability to make out a *prima facie* disability discrimination claim based on her termination in October 2011.[6] Rather, CommoLoCo assumes that Vazquez can establish a *prima facie* claim and then asserts that closing its Carolina II branch as part of a reduction in force was a legitimate, non-discriminatory reason for terminating Vazquez. (Docket No. 184 at pp. 9-11.) Vazquez responds by arguing that the alleged reduction in force was pretext for discrimination. (Docket No. 202 at pp. 18-22, 26-27.)

---

[6] Although CommoLoCo challenges Vazquez's failure to accommodate claim by arguing that she was not disabled when she requested an accommodation in 2010, see Docket No. 184 at p. 8, CommoLoCo presents no argument as to why plaintiff Vazquez was not disabled when it terminated her in October 2011.

Following the parties' lead, the Court assumes without deciding that Vazquez can establish a *prima facie* disability discrimination claim based on her termination. Because CommoLoCo articulated a non-discriminatory reason for terminating Vazquez, the burden is now back on Vazquez to show that CommoLoCo's reason is "pretext cloaking discriminatory animus." Ramos-Echevarria, 659 F.3d at 187. Vazquez must clear two hurdles to meet her burden: she must prove that CommoLoCo's given reason for terminating her is a sham, and she must advance evidence to show that the true reason CommoLoCo terminated her was her disability. See Tobin, 433 F.3d at 105; Thompson v. Coca-Cola Co., 522 F.3d 168, 177 (1st Cir. 2008).

To clear the first hurdle, a plaintiff may demonstrate that the employer's articulated reason "had no basis in fact, did not actuate the termination, *or* was insufficiently weighty to motivate such a decision." Webber v. Int'l Paper Co., 417 F.3d 229, 237 (1st Cir. 2005); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000) (noting that a plaintiff can establish pretext by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" (quoting Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998))).

Plaintiff does not attack the legitimacy of CommoLoCo's decision to close the Carolina II branch as part of a reduction in

force.  Instead, she challenges CommoLoCo's decision to decline to offer her a transfer when her branch closed, like it did for two other branch managers whose branches closed on the same day. (Docket No. 202 at pp. 18-22, 26-27.)  CommoLoCo decided who to transfer based on seniority, and it calculated seniority by the amount of time the employee had worked for CommoLoCo.  See Docket Nos. 185-7; 208-2 at p. 13.  Vazquez does not challenge, on a legal basis or otherwise, this method for determining seniority.[7] Instead, she argues that she was more senior than Maribel Rivera Rosario ("Rivera"), a branch manager who was offered a transfer. She makes this argument without calculating how long she and Rivera worked for CommoLoCo.  Doing the math reveals that her argument is all smoke and no fire.

CommoLoCo hired Rivera on January 27, 1995.  (Docket No. 202-18 at p. 10.)  By the time her branch closed on October 3, 2011, she had worked for CommoLoCo for 6,094 days.

Plaintiff Vazquez first worked for CommoLoCo from July 2, 1990 until November 26, 1997 - a total of 2,705 days.  See Docket No. 185-6 at pp. 2-3.  CommoLoCo then rehired Vazquez on July 1, 2002. (Docket No. 185-2 at p. 7.)  When her branch closed on October 3,

---

[7]  Vazquez acknowledges that for "seniority porpoises [sic], [CommoLoCo] took into account the period [Vazquez] worked from 1990 until 1997 and from 2002 until her employment was terminated," even though "for benefits and company porpoises [sic], [CommoLoCo] took into account the years [Vazquez] was not working with [CommoLoCo]." (Docket No. 202 at p. 27.)

2011, her second period working for CommoLoCo totaled 3,382 days. In sum during these two periods, Vazquez worked for CommoLoCo for 6,087 days - seven days less than Rivera.  Thus, Rivera was more senior, albiet by only seven days, than Vazquez.  Vazquez's challenge to the factual basis for CommoLoCo's seniority determination therefore fails..

Vazquez advances no other argument as to why CommoLoCo's articulated reason for terminating her is a sham.  She thus has not cleared the first hurdle of her burden.  She makes no attempt at clearing the second hurdle, and the Court finds no evidence on the record from which a reasonable jury could conclude that CommoLoCo or Vega had a disability-based discriminatory animus that motivated the decision to terminate Vazquez.

The Court therefore **GRANTS** summary judgment in favor of defendant CommoLoCo as to Vazquez's discriminatory termination claim brought pursuant to the ADA and Law 44.

### IV.   RETALIATION CLAIMS

**A.   ADA**

The ADA's retaliation provision makes it unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."  42 U.S.C. § 12203(a).  "[A]n ADA plaintiff need not

succeed on a disability discrimination claim in order to assert a claim for retaliation." Colon-Fontanez, 660 F.3d at 36.

When a plaintiff tries to prove retaliation through indirect evidence, the First Circuit Court of Appeals applies the familiar burden-shifting framework. Collazo-Rosado v. Univ. of P.R., 765 F.3d 86, 92 (1st Cir. 2014). The plaintiff must first make out a *prima facie* retaliation claim by establishing (1) that she engaged in protected conduct; (2) that she experienced an adverse employment action; and (3) that there was a causal connection between the protected conduct and the adverse employment action. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013). If she makes a *prima facie* showing, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its employment action, and then back to the plaintiff to show that the offered reason is pretext cloaking the employer's retaliatory animus. Id.

Here, plaintiff Vazquez establishes the first element of a *prima facie* claim. She engaged in protected conduct by requesting SIFC leave on December 28, 2009; by requesting a temporary demotion on March 22, 2010; by filing a charge with the ADU on September 1, 2010; and by requesting SIFC leave on September 21, 2010. See 42 U.S.C. § 12203(a); Kelley, 707 F.3d at 115 ("Requesting an accommodation is protected conduct under the ADA's retaliation provision."); Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d

638, 647 (1st Cir. 2000) ("[A] medical leave of absence . . . is a
reasonable accommodation under the [ADA] in some circumstances.").

As to the second element, to establish an adverse employment
action in a retaliation claim, a plaintiff must show that "a
reasonable employee would have found the challenged action
materially adverse, which in this context means it well might have
dissuaded a reasonable worker from making or supporting a charge of
discrimination." Colon-Fontanez, 660 F.3d at 36 (internal
quotation marks and citations omitted) (quoting Burlington N. &
Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). "For
retaliatory action to be material, it must produce 'a significant,
not trivial, harm.'" Id. (quoting Carmona-Rivera v. Puerto Rico,
464 F.3d 14, 20 (1st Cir. 2006)). Vazquez experienced adverse
employment actions when she received a negative performance
evaluation on September 30, 2011, and when she was terminated on
October 4, 2011. See id. ("[U]nwarranted negative job evaluations
. . . may constitute adverse employment action, subject to the
facts of a particular case."); Valle-Arce v. P.R. Ports Auth., 651
F.3d 190, 198 (1st Cir. 2011) ("[T]ermination of employment
obviously is an adverse employment action.").

Vazquez stumbles on the third element of a *prima facie* claim.
After listing her protected activities and the adverse employment
actions she experienced, Vazquez explains in the most conclusory
fashion: "In view of the above[,] it was because of the protected

activities executed by Plaintiff that Defendant took those adverse
actions against Plaintiff." (Docket No. 202 at p. 37.)  Leaving
the Court to do her work for her, Vazquez points to no evidence in
the record to prove a causal connection between her protected
activities and the adverse actions.  It is not the Court's job "to
put flesh on the bare bones of an underdeveloped argument." United
States v. Mathur, 624 F.3d 498, 508 (1st Cir. 2010).  Because
Vazquez bears the burden of proving a *prima facie* claim, "she can
thwart summary judgment only by identifying competent evidence in
the record sufficient to create a jury question." Tobin, 775 F.3d
at 450-51.

The record reveals no evidence suggesting a causal connection
between Vazquez's protected conduct and the adverse actions she
experienced.  A plaintiff may rely on "very close temporal
proximity between the protected action by the employee and the
adverse employment action by the employer [to] give rise to an
inference of causation." Valle-Arce, 651 F.3d at 199; see
Sanchez-Rodriguez v. AT & T Mobility P.R., Inc., 673 F.3d 1, 15
(1st Cir. 2012) (holding that span of three months between filing
EEOC complaint and being disciplined was "close enough to suggest
causation"); Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 38
(1st Cir. 2010) (holding that span of four days between requesting
reasonable accommodation and being terminated is sufficient to
establish *prima facie* claim but insufficient to prove pretext and

retaliatory animus); Calero-Cerezo, 355 F.3d at 25-26 (holding that span of one month between filing EEO complaint and being suspended was sufficient to establish *prima facie* claim, but noting that "[t]hree and four month periods have been held insufficient to establish a causal connection based on temporal proximity"). Here, more than a year passed between Vazquez's last protected activity, requesting SIFC leave on September 21, 2010, and her first adverse employment action, receiving a negative performance evaluation on September 30, 2011. More than a year is not "very close temporal proximity" that would give rise to an inference of causation. See Valle-Arce, 651 F.3d at 199.

Thus, even viewing the record in the light most favorable to Vazquez, a reasonable jury could not infer a causal connection between Vazquez's protected conduct and the adverse actions she experienced. Vazquez thus fails to establish the third element of a *prima facie* retaliation claim. Accordingly, the Court **GRANTS** summary judgment in favor of defendant CommoLoCo as to Vazquez's ADA retaliation claim.

**B.   Title VII**

Title VII makes it unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."   42

U.S.C. § 2000e-3(a).   The employment practices made unlawful by Title VII are those that discriminate against an individual because of the individual's "race, color, religion, sex, or national origin."   Id. § 2000e-2(a)(1).

Although Vazquez identifies Title VII as the cause of action for her retaliation claim in her complaint, (Docket No. 1 at pp. 17-18), she never alleges, in her complaint or anywhere in the record, that she opposed CommoLoCo's discrimination against her based on her race, color, religion, sex, or national origin, or that she made a charge pursuant to Title VII.   All of Vazquez's allegations of retaliation are rooted in CommoLoCo's alleged disability discrimination, and the retaliation provision of the ADA is the proper cause of action for these claims.   See 42 U.S.C. § 12203(a).

The Court therefore **GRANTS** summary judgment in favor of defendant CommoLoCo as to Vazquez's Title VII retaliation claim.

## C.    **Law 115**

Law 115 makes it unlawful for an employer to "discharge, threaten, or discriminate against an employee regarding the terms, conditions, compensation, location, benefits or privileges of the employment should the employee offer or attempt to offer . . . any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico."   P.R. Laws. Ann. tit. 29 § 194a.

In <u>Feliciano Martes v. Sheraton</u>, 182 P.R. Dec. 368, 395-99, (2011), the Puerto Rico Supreme Court adopted and applied the <u>McDonnell Douglas</u> burden-shifting framework to Law 115 claims. The Puerto Rico Supreme Court specifically held that the plaintiff has the initial burden of establishing a *prima facie* claim by showing (1) that she engaged in protected conduct; (2) that she experienced an adverse employment action; and (3) that there was a causal nexus between the protected conduct and the adverse action. <u>Feliciano Martes</u>, 182 P.R. Dec. at 396.

Here, the factual basis for Vazquez's Law 115 claim is the same as the factual basis for her ADA retaliation claim. <u>See</u> Docket No. 1 at pp. 17-18. CommoLoCo moves for summary judgment on Vazquez's Law 115 claim on the same grounds that it moved for summary judgment on her ADA retaliation claim, (Docket No. 184 at p. 24), and Vazquez agrees that the claims are coterminous, (Docket No. 202 at p. 37).

Accordingly, for the same reasons the Court granted summary judgment on Vazquez's ADA retaliation claim, see <u>supra</u> Part IV. A, the Court **GRANTS** summary judgment in favor of defendant CommoLoCo as to Vazquez's Law 115 retaliation claim.

## V.   TERMINATION WITHOUT JUST CAUSE CLAIM

Puerto Rico Law 80 requires employers to compensate employees who are terminated without just cause. P.R. Laws Ann. tit 29, § 185a. Once an employee establishes that she was terminated, the

employer must show that the termination was for just cause.  <u>Cruz
v. Bristol-Myers Squibb Co., PR</u>, 699 F.3d 563, 572 (1st Cir. 2012).
The burden then shifts back to the employee to rebut this showing.
<u>Id.</u>

Just cause may be founded on the "[f]ull, temporarily [*sic*] or
partial closing of the operations of the establishment."  P.R. Laws
Ann. tit 29, § 185b(d).  If "the company has more than one office,
factory, branch or plant, the full, temporary or partial closing of
operations of any of these establishments shall constitute just
cause for discharge."  <u>Id.</u>

Here, CommoLoCo has shown that it terminated Vazquez because
it closed the Carolina II branch, of which she was the branch
manager, as part of a reduction in force due to the lack of growth
in Puerto Rico's economy.  Although Vazquez attempts to rebut this
showing by arguing that the real reason she was terminated was
CommoLoCo's discriminatory and retaliatory animus, she has not put
forth evidence from which a reasonable jury could infer this cause.
<u>See</u> <u>supra</u> Parts III. C; IV. A.  Accordingly, the Court **GRANTS**
summary judgment in favor of defendant CommoLoCo as to Vazquez's
Law 80 claim.

## VI.  CONCLUSION

For the reasons explained above, the Court **GRANTS IN PART** and
**DENIES IN PART** defendant CommoLoCo's motion for summary judgment,
(Docket No. 184).

Summary judgment is **GRANTED** in favor of CommoLoCo as to plaintiff Vazquez's hostile work environment and discriminatory termination claims brought pursuant to the ADA and Law 44; her retaliation claims brought pursuant to the ADA, Title VII, and Law 115; and her termination without just cause claim brought pursuant to Law 80.  These claims are **DISMISSED WITH PREJUDICE.**

Summary judgment is **DENIED** as to plaintiff Vazquez's failure to accommodate claim brought pursuant to the ADA and Law 44.

The Court will hold a pre-trial evidentiary hearing to determine whether Vazquez suffered from a severe mental disability during a period of at least 127 days between August 24, 2010, and October 25, 2011, such that the Court should equitably toll the 300-day statute of limitations and find Vazquez's ADA failure to accommodate claim timely.  **That pretrial evidentiary hearing will be held on August 19, 2016 commencing at 9:00 a.m.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 13, 2016.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE